## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PHILLIP A. THOMPSON, III,** | : | |
| **Plaintiff,** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **TAMMY FERGUSON, et al.,** | : | **No. 19-4580** |
| **Defendants.** | : | |

## <u>MEMORANDUM</u>

**Schiller, J.**                                                    **December 31, 2020**

Phillip A. Thompson, III, who is currently is incarcerated, sues Defendants (1) Tammy Ferguson, Superintendent of SCI Phoenix, (2) Mandy Sipple, Deputy Superintendent of SCI Phoenix, (3) John Wetzel, Pennsylvania Department of Corrections (DOC) Secretary, and (4) Smart Communications for violations of 42 U.S.C. § 1983. Before the Court is Defendants Ferguson, Sipple, and Wetzel's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons that follow, the motion will be granted in part and denied in part. However, Defendants are entitled to qualified immunity. Therefore, the law requires that the Complaint is dismissed with prejudice.

## I.      FACTUAL BACKGROUND

Thompson asserts that while he was incarcerated at SCI Phoenix, the Defendants opened, photocopied, and retained his mail from the Pennsylvania Superior Court and county District Attorney's Offices between October 2018 and February 2019 in a manner that violated his constitutional rights to freedom of speech and access to courts. Thompson's mail was handled pursuant to a new mail policy that the Pennsylvania DOC instituted in October 2018. The portion of that policy pertaining to legal mail was rescinded in April 2019. Thompson's claims pertain to

the DOC's application of this now-defunct mail policy.

## A. Procedural History

Thompson originally filed the operative Amended Complaint ("Compl.", Document No. 2) as an Amended Complaint in a previous civil action on September 4, 2019. In the previous action, this Court dismissed all claims in the Amended Complaint related to destruction of Thompson's personal property during his transfer to SCI Phoenix. *Thompson v. Ferguson*, Civ. A. No. 19-3455, 2019 WL 4858270 (E.D. Pa. Oct. 2, 2019).[1] Because Thompson's claims about his legal mail were unrelated to his claims about destruction of his property, the Court severed the legal mail claims and directed the Clerk of Court to open a new lawsuit—this civil action—using the current Amended Complaint as an opening document, and naming as defendants Ferguson, Sipple, Wetzel, and Smart Communications. When dismissing the prior action, the Court noted that if Thompson proceeded *in forma pauperis* here, his claims would be subject to screening under 28 U.S.C. § 1915(e)(2)(B). The Court granted Thompson's motion for leave to proceed *in forma pauperis* in this action, and the Amended Complaint was deemed filed. Defendants Ferguson, Sipple, and Wetzel now move to dismiss the Amended Complaint, and Thompson opposes their motion. Defendant Smart Communications has not yet been served and has not appeared in this action.

## B. The Rescinded DOC Legal Mail Policy

Thompson alleges that the DOC's "new mail policy" violated his constitutional rights.

---

[1]     Thompson argues these claims again in his Opposition to the Motion to Dismiss in this action. The Court will not consider the claims related to destruction of his property in this action because they have already been dismissed in another action, which has preclusive effect. *Allen v. McCurry*, 449 U.S. 90, 94 (1980) ("a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.").

(Compl. ¶ 33.) The new policy Thompson complains of was a change to the DOC's Inmate Mail and Incoming Publications Policy, DC-ADM 803, effective October 3, 2018.[2]  Thompson does not plead the specifics of this DOC mail policy, but the Court takes judicial notice of this policy as a matter of public record. *Brock v. Corr. Emergency Response Team*, Civ. A. No. 18-3814, 2020 WL 668271, at *5 n.5 (E.D. Pa. Feb. 10, 2020) (taking judicial notice of Department of Corrections policy); *Leonhauser v. Long*, Civ. A. No. 11-241, 2012 WL 398642, at *3 n.2 (M.D. Pa. Jan. 4, 2012) (same); *Schott v. Doe*, Civ. A. No. 05-1730, 2007 WL 539645, at *7 (W.D. Pa. Feb. 15, 2007) (same).

The DC-ADM 803 effective October 3, 2018 ("2018 DC-ADM 803") provided that non-legal mail[3] to an inmate was to be addressed and sent to Smart Communications, the Department's contracted mail processing center in Florida, whereas incoming legal mail was to be sent where the inmate was housed. *See* DC-ADM 803 (Effective Date Oct. 3, 2018) at 1-1.[4] Incoming legal mail was defined as: (1) mail from an inmate's attorney that was hand delivered to a facility or identified with a control number, (2) mail from a court, and (3) mail from an elected or appointed

---

[2]    The DOC's core policies are referred to as DC-ADMs, and the policy regarding Inmate Mail and Incoming Publications Policy is DC-ADM 803. *Understanding DOC Administrative Policies*, Pa. Dep't of Corrections, www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/ Understanding-DOC-Administrative-Policies.pdf (last visited Dec. 28, 2020). The current version of DC-ADM 803 is available on the DOC's website. *DC-ADM 803 (Effective Date Aug. 10, 2020)*, Pa. Dep't of Corrections, www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/803%20 Inmate%20Mail%20and%20Incoming%20Publications.pdf (last visited Dec. 28, 2020).

[3]    The policy refers to "privileged correspondence" and "non-privileged correspondence." For purposes of this opinion, the Court refers to this distinction as legal mail and non-legal mail.

[4]    DC-ADM 803 (Effective Date Oct. 3, 2018) is not available on the DOC's website, but it is publicly available in court filings from a 2018 lawsuit that challenged the policy. Exhibit 4 to Complaint, *Pa. Institutional Law Project v. Wetzel*, Civ. A. No. 18-2100 (M.D. Pa. Oct. 30, 2018), ECF No. 1-5. The DOC did not dispute the authenticity of the version of DC-ADM 803 (Effective Date Oct. 3, 2018) filed in that action. *See* Answer to Complaint ¶¶ 63-65, 70-73, *Pa. Institutional Law Project v. Wetzel*, Civ. A. No. 18-2100 (M.D. Pa. Nov. 16, 2018), ECF No. 19.

federal, state, or local official who had sought and obtained a control number. *Id.* at Glossary of Terms at 4. The policy explicitly noted that "[n]ot all correspondence between an inmate and elected or appointed federal, state, or local official will require privileged correspondence processing. Control numbers will only be issued when the underlying matter involves matters related to a confidential investigation process or similar concerns." *Id.* For non-legal mail, Smart Communications had to open and scan the mail and electronically transmit scanned copies to prison facility staff. *Id.* at 1-8. Prison facility staff were to print paper copies of incoming non-legal mail and deliver the copies to inmate recipients. *Id.* at 1-9. Smart Communications was to securely maintain original incoming correspondence and scanned electronic copies for 45 days and then destroy the original and electronic copies. *Id.* at 1-8.

The DOC procedure for handling incoming legal mail was as follows: (1) mail was to be opened and inspected for contraband in the inmate's presence; (2) mail was to be photocopied in the inmate's presence; (3) photocopies of the contents of mail were to be delivered to the inmate; (4) mail was to be noted on a legal mail log, which the inmate was to sign; (5) original mail was to be sealed in an opaque envelope secured with evidence tape in the inmate's presence; (6) the sealed envelope containing the original mail was to be deposited into a locked and secured receptacle provided by a vendor; (7) only the vendor was to be able to unlock or access the receptacle; (8) the activity of DOC staff and the inmate during this process were to be video recorded, but the contents of the mail was not to be recorded; (9) the vendor was to securely maintain the original mail and video recording for 45 days and then securely destroy the original mail and video recording; and (10) before the mail's destruction, an inmate could make a request to access the original mail, in accordance with this process, or to preserve the mail from destruction

4

pursuant to a grievance. *Id.* at 1-12–1-13.

Shortly after the DOC's new mail policy took effect, several groups of attorneys representing Pennsylvania prisoners challenged the constitutionality of the new policy for handling incoming legal mail. Pursuant to a settlement agreement approved by the district court, the DOC changed its policy for handling inmates' incoming legal mail. The DOC agreed to cease photocopying all legal mail as of April 5, 2019.

### C. Thompson's Legal Mail

Thompson's claims pertain to three pieces of mail he received from the Pennsylvania Superior Court dated October 24, 2018, November 21, 2018, and December 26, 2018, a piece of mail from the Montgomery County District Attorney's Office dated January 9, 2019, and a piece of mail from the Delaware County District Attorney's Office Law & Appeals Division dated February 5, 2019. (Compl. ¶ 21; Compl. Ex. K at 72-75.) Thompson makes two separate claims about these pieces of mail he received between October 2018 and February 2019.

First, Thompson states his mail had to be sent through Smart Communications, where it was opened outside of his presence, copied, and placed in a database for seven years before being destroyed. (Compl. ¶¶ 31-33.) He further contends that Smart Communications did not provide him the original mail. (*Id.* ¶ 32.) Thompson's second allegation pertains specifically to his mail from the Pennsylvania Superior Court. This allegation is presented in Thompson's Administrative Grievance, which is attached to the Amended Complaint. (Compl. Ex. H at 62.) Thompson states that his mail from the Superior Court was opened in front of him, photocopied, and the original mail was withheld from him. (*Id.*) He further alleges that he "was not allowed to see or touch the Legal mail sent to him by the PA Superior Court." (*Id.*)

## II.     STANDARD OF REVIEW

On a motion to dismiss, the Court must "must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010). A *pro se* complaint is "to be liberally construed," and "must be held to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

"In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer*, 605 F.3d at 230. "Courts have defined a public record, for purposes of what properly may be considered on a motion to dismiss, to include…letter decisions of government agencies…and published reports of administrative bodies[.]" *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1197 (3d Cir. 1993) (internal citations omitted). Here, the Court considers the Amended Complaint, exhibits, and the 2018 DC-ADM 803, which it relies upon as both a matter of public record and an indisputably authentic document upon which Thompson bases his claims.

When a prisoner's complaint is filed *in forma pauperis*, seeks redress from a governmental entity or an officer or employee of a governmental entity, or brings claims with respect to prison conditions under Federal law, a district court "shall" dismiss the complaint *sua sponte* if the action is "frivolous," "malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A(b); 42 U.S.C. § 1997e(c)(1). "The court's obligation to dismiss a complaint under

these screening provisions is not excused even after defendants have filed a dispositive motion." *Holbrook v. Jellen*, Civ. A. No. 14-28, 2017 WL 4401897, at *5 (M.D. Pa. Mar. 8, 2017), report and recommendation adopted, 2017 WL 4387111 (M.D. Pa. Oct. 3, 2017). A plaintiff whose complaint fails to state a cause of action is entitled to amend the complaint unless doing so would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

## III.     DISCUSSION

As a threshold matter, the Court will dispense of moving Defendants' cursory argument seeking to dismiss Thompson's claims as moot. Defendants argue, without any citation to legal authority, that "[b]ecause that mail policy is no longer in effect, the claim is moot." (Def. Mem. at 5.) Defendants are wrong for two reasons.

First, a claim for damages almost always survives even if some forms of requested relief become moot. *Doe v. Delie*, 257 F.3d 309, 314 (3d Cir. 2001). The Amended Complaint does not clearly specify what relief Plaintiff seeks for his mail-related claims (*see* Compl. at 20-21), but the exhibits clarify that Thompson seeks compensatory and punitive damages for these claims. (Compl. Ex. H at 62; Compl. Ex. J at 69.)

Second, the claims have not become moot during the pendency of this action. The central question of mootness is whether a change in the circumstances that prevailed at the beginning of the litigation renders the case no longer justiciable. *Jersey Cent. Power & Light Co. v. State of N.J.*, 772 F.2d 35, 39 (3d Cir. 1985). The DOC rescinded the relevant legal mail policy in April 2019, nearly five months before Thompson first asserted these claims in the previous action. There has been no change in circumstances during the course of the litigation that could render the case moot. Defendants' mootness argument is unavailing, so the Court now turns to the merits of

Thompson's claims.

## A.  Section 1983 Liability

Section 1983 provides a cause of action against any person who, acting under color of state law, deprives another of his or her federal rights. 42 U.S.C. § 1983. "[G]enerally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *West v. Atkins*, 487 U.S. 42, 50 (1988). Thompson brings his claims pursuant to 42 U.S.C. § 1983 against DOC Superintendent Ferguson, Deputy Superintendent Sipple, and Secretary Wetzel ("DOC Defendants") in their individual capacities and against Smart Communications as a DOC contractor. (Compl. at 2-4, ¶ 29.)

Government entities and supervisors cannot be held responsible under § 1983 for the acts of their employees under the traditional principles of *respondeat superior* or vicarious liability. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 583 (3d Cir. 2003) (citing *Monell v. New York City Dept. of Soc. Servs*., 436 U.S. 658, 691 (1978)). A defendant in a civil rights action "cannot be held responsible for a constitutional violation which he or she neither participated in nor approved[.]" *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007) (quoting *C.H. ex rel. Z.H. v. Oliva*, 226 F.3d 198, 201 (3d Cir. 2000)). However, individual policymakers can be liable for their own actions in adopting and maintaining a practice, policy, or custom that causes constitutional violations with deliberate indifference to the consequences. *See Stoneking v. Bradford Area Sch. Dist*., 882 F.2d 720, 724-25 (3d Cir. 1989). A supervisor may also "be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*,

372 F.3d 572, 586 (3d Cir. 2004).

None of the DOC Defendants raise their lack of individual involvement in the new mail policy in their motion to dismiss. Interpreting the pleadings liberally, the Court finds that the Amended Complaint plausibly states a claim against the DOC Defendants for approving and applying the new mail policy that violated Thompson's constitutional rights. (Compl. ¶¶ 28-29, 33; Ex. J at 69.) Defendant Ferguson also authored SCI Phoenix's denial of Thompson's grievance concerning his legal mail. (Ex. I at 67.) This is sufficient personal involvement in the alleged violation to state a claim for relief. *See Sutton v. Rasheed*, 323 F.3d 236, 249-50 (3d Cir. 2003).

Smart Communications is not a governmental agency or employee, but Plaintiff alleges it was directly involved in handling his mail. Section 1983 liability is not limited solely to public employees. "Anyone whose conduct is 'fairly attributable to the State' can be sued as a state actor under § 1983." *Filarsky v. Delia*, 566 U.S. 377, 383 (2012) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)). To constitute conduct fairly attributable to the State, "the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the [S]tate or by a person for whom the State is responsible[,]" and "the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Lugar*, 457 U.S. at 937. A state actor includes state officials, anyone who "has acted together with or has obtained significant aid from state officials," or whose "conduct is otherwise chargeable to the State." *Id.* Smart Communications is named as a defendant for its role as a partner of the DOC Defendants, and its actions of opening, copying, and electronically storing Thompson's mail. (Compl. ¶¶ 31-33.) Although Smart Communications is not a government entity, Thompson has plausibly alleged that it may be sued as a state actor under § 1983 because it acted together with

the DOC in implementing the mail policy. Therefore, the Court will consider the merits of Thompson's alleged constitutional harms.

### B.  Right to Access Courts

Thompson claims the opening and copying of his legal mail pursuant to the DOC's new mail policy violated his First, Sixth, and Fourteenth Amendment rights to access to courts. (*See* Compl. ¶¶ 21, 28-34.) Thompson alleges that his legal mail from the Pennsylvania Superior Court and District Attorney's Offices between October 2018 and February 2019 pertained to the appeal of his criminal conviction and his request for a criminal investigation into the destruction of his property at SCI Phoenix. (Compl. ¶ 21.) His access to courts claim must be dismissed because Thompson has not alleged actual injury to any legal claims.

Prisoners have a well-established constitutional right of access to the courts. *Lewis v. Casey*, 518 U.S. 343, 350 (1996). A claim for denial of access to courts requires a showing of actual injury, meaning that a prisoner's "nonfrivolous legal claim" challenging his sentence or conditions of confinement was frustrated or impeded. *Id.* at 353-55; *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008). A prisoner alleging interference with his legal mail must demonstrate that the interference hindered his efforts to pursue a legal claim to give rise to a claim for denial of access to the courts. *Oliver v. Fauver*, 118 F.3d 175, 178 (3d Cir. 1997).

In the prior action, which involved the same pleadings, the Court dismissed an access to courts claim premised on the destruction of Thompson's property during his transfer to SCI Phoenix because Thompson failed to allege actual injury to his criminal appeal. *Thompson*, 2019 WL 4858270, at *5. Similarly, Thompson has failed to state an access to courts claim premised on interference with his legal mail.

The Amended Complaint does not plausibly allege actual injury to Thompson's criminal appeal. The Delaware County Court of Common Pleas dismissed Thompson's third Post Conviction Relief Act (PCRA) petition in February 2018, and he filed a notice of appeal to the Superior Court. *Commonwealth v. Thompson*, No. 1937 EDA 2018, 2019 WL 1596195, at *2 (Pa. Super. Ct. Apr. 15, 2019). The Superior Court issued a rule to show cause dated November 21, 2018 concerning the timeliness of Thompson's notice of appeal. *Id.* at *2 n.3. Thompson responded on December 6, 2018, resulting in a discharge of the rule to show cause on December 26, 2018. *Id.* The issue was then referred to the merits panel, and the court accepted Thompson's notice of appeal as timely filed. *Id.* Upon consideration of the appeal, including Thompson's timely appellate brief and statement of errors complained of on appeal, the Superior Court affirmed the PCRA court's dismissal of Thompson's petition because it was filed outside the statutory period. *Id.* at *2-3 (citing 42 Pa. Cons. Stat. Ann. § 9545(b)).

Thompson has not alleged how the opening or copying of his legal mail between October 2018 and February 2019 prevented him from pursuing his criminal appeal or materially altered his success on appeal. In opposition to the motion to dismiss, Thompson argues that not allowing him to have the original correspondence "which is necessary to file briefs and other court documentation" caused him injury in his appeal before the Superior Court. (Plt. Opp. at 3.) But Thompson's PCRA appeal was not denied because he did not file original documents or for any other procedural defect with the appeal. Rather, the Superior Court's consideration of Thompson's appellate brief indicates that any alleged interference with mail from the Superior Court or the Delaware County District Attorney's Office between October 2018 and February 2019 did not materially alter the success of Thompson's criminal appeal. Moreover, Thompson has not pleaded

facts to show that his third PCRA petition, which was dismissed, was a non-frivolous legal claim.

Thompson's only remaining allegation concerning denial of access to courts through interference with his mail relates to his request for a criminal investigation into the destruction of his property at SCI Phoenix. (Compl. ¶ 21.) Thompson's request for a criminal investigation is not a valid legal claim. *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973). Even if Thompson was the victim of a crime because of the destruction of his property, he would not be a party in any subsequent criminal prosecution by the local Montgomery County District Attorney's Office. Thompson had the opportunity to pursue a civil cause of action in this Court for claims related to the destruction of his personal property at SCI Phoenix, and he does not allege that case was hindered by the DOC's mail policy.

In sum, Thompson has not plausibly alleged any actual injury stemming from opening or copying of his legal mail between October 2018 and February 2019, so he has not stated a claim for denial of access to courts. The Court further concludes that leave to amend this claim would be futile. *See Armstrong v. Coleman*, Civ. A. No. 11-1074, 2012 WL 1448421, at *3 (W.D. Pa. Mar. 21, 2012), report and recommendation adopted as modified, 2012 WL 1454906 (W.D. Pa. Apr. 26, 2012). Therefore, the access to courts claim is dismissed with prejudice.

### C.  Freedom of Speech

Thompson also asserts that the DOC's new mail policy, as applied to his mail from District Attorney's Offices and the Superior Court, violated his First Amendment right to freedom of speech. (*See* Compl. ¶¶ 21, 26, 28-34.) Specifically, he asserts violation of his "rights not to [have] his privileged and or protected legal mail…read, copied, censored, infringed upon, and invaded, [or] to have the originals taken," and his "rights to communicate without intrusion of privacy."

(Compl. ¶¶ 28-29.) The Court finds Thompson has plausibly alleged that the DOC's new policy of copying and retaining his mail from the court was a violation of his First Amendment right to freedom of speech. Thompson cannot prevail on his arguments regarding the DOC's classification of his mail from the District Attorney's Office as non-legal mail, but he has potentially stated a claim for the DOC's use of Smart Communications to process his non-legal mail from the District Attorney's Offices.

In order to assess whether Thompson has stated any valid First Amendment claims, the Court must first address the Third Circuit's recent history evaluating similar challenges. The Third Circuit has repeatedly held that "a pattern and practice of opening properly marked incoming court mail outside an inmate's presence infringes communication protected by the right to free speech." *Bieregu v. Reno*, 59 F.3d 1445, 1452 (3d Cir. 1995), *abrogated on other grounds by Lewis v. Casey*, 518 U.S. 343 (1996); *accord Jones v. Brown*, 461 F.3d 353, 359 (3d Cir. 2006) ("explicit policy of opening legal mail outside the presence of the addressee inmate…impinges upon the inmate's right to freedom of speech."). This is because, "[s]uch a practice chills protected expression and may inhibit the inmate's ability to speak, protest, and complain openly, directly, and without reservation with the court." *Bieregu*, 59 F.3d at 1452. An inmate claiming a violation of this freedom of speech need not allege any consequential injury stemming from the violation because "protection of an inmate's freedom to engage in protected communications is a constitutional end in itself." *Jones*, 461 F.3d at 360.

In *Jones,* the Third Circuit enjoined the application of a New Jersey DOC policy that had suspended the regulatory requirement that legal mail be opened in an inmate's presence for as long as the emergency declared by the Governor on September 11, 2001 remained in effect. *Id.* at 356-

57. After determining that the policy burdened prisoners' freedom of speech, the *Jones* court undertook a factual analysis, applying the standard set forth in *Turner v. Safley*, 482 U.S. 78 (1987), to determine whether the policy was nonetheless constitutionally valid because it was "reasonably related to legitimate penological interests." *Id.* at 358 (quoting *Turner*, 482 U.S. at 89). The *Turner* analysis requires a court to find, first, that there is a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it." *Turner*, 482 U.S. at 89 (internal quotation marks omitted). If a rational relationship exists, a court must then consider "(1) whether inmates retain alternative means of exercising the circumscribed right, (2) the burden on prison resources that would be imposed by accommodating the right, and (3) whether there are alternatives to the regulation that fully accommodate the prisoners' rights at de minimis cost to valid penological interests." *Jones*, 461 F.3d at 360 (internal quotation marks omitted). The *Jones* court found the New Jersey DOC policy unconstitutional because the state failed to demonstrate a rational connection between the legal mail policy and the penological interests identified to justify it. *Id.* at 364.

After the ruling in *Jones*, the Third Circuit considered the constitutionality of the Pennsylvania DOC's inmate mail policy DC-ADM 803, as amended in 2002 and 2004, which introduced the control number system for legal mail. *Fontroy v. Beard*, 559 F.3d 173, 175-76 (3d Cir. 2009). Under that system, incoming mail from attorneys and courts could only be treated as legal mail, and therefore opened in an inmate's presence, if it was hand delivered to a facility or if the attorney or court obtained a control number which it placed on the outside of the envelope. *Id.* Attorneys and courts could obtain control numbers by faxing a written request to the DOC. *Id.* at 176. Non-legal mail was opened at a mailroom outside the perimeter of the corrections facility. *Id.*

14

at 174. In *Fontroy*, DOC officials conceded that the control number policy impeded prisoners' freedom of speech to some degree because it resulted in opening some mail from attorneys and courts outside the inmates' presence, but they argued that the policy could still be constitutional under a *Turner* analysis. *Id.* at 177. After undertaking this analysis, the *Fontroy* court agreed. *Id.* at 182. It found the Pennsylvania DOC's control number policy constitutional and reversed the lower court's grant of summary judgment to the inmates and denial of summary judgment to DOC officials. *Id.* at 182-83.

It is with this precedent in mind that the Court approaches Thompson's allegations concerning the DOC's new mail policy. Under the 2018 DC-ADM 803, mail from a court was always classified as legal mail and did not require a control number. In order for mail from a District Attorney's Office to be considered legal mail, the District Attorney's Office needed to obtain and use a control number, which the DOC would only issue when the underlying matter involved a confidential investigation process or similar matter. Because mail from a court and a District Attorney's Office were not treated equivalently under the 2018 DC-ADM 803, the Court will consider separately Thompson's allegations about his mail from the Superior Court and District Attorney's Offices.

### 1.  Mail from the Pennsylvania Superior Court

Thompson asserts two distinct theories of how his mail from the Pennsylvania Superior Court was treated. First, the Complaint generally asserts that mail from the state court was forced to be sent through Smart Communications and was not opened in Thompson's presence. (Compl. ¶ 32.) Second, in the administrative grievance attached as an exhibit to the Complaint, Thompson asserts that mail from a court, postmarked October 24, 2018, was opened in his presence at SCI

15

Phoenix and photocopied, seemingly in compliance with 2018 DC-ADM 803's policy for legal mail. (Compl. Ex. H at 62.) The exhibits attached to the Complaint also include three images of envelopes from the Pennsylvania Superior Court dated October 24, 2018, November 21, 2018, and December 26, 2018. (Compl. Ex. K at 72-74.) These envelopes do not contain recipient addresses, so it is not clear whether they were delivered to Smart Communications in Florida or to SCI Phoenix. The October and November envelopes are stamped "LEGAL MAIL," which indicates that they were treated in accordance with 2018 DC-ADM 803's procedure for legal mail. (*Id.* at 73-74.) The December envelope does not contain the same marking to indicate it was treated as legal mail. (*Id.* at 72.)

The 2018 DC-ADM 803 classifies mail from a court as legal mail without any reference to a necessary control number, and according to the policy, all legal mail was to be addressed to the state correctional institution and opened in the inmate's presence. Therefore, to the extent that Thompson asserts his mail from a court was opened by Smart Communications outside of his presence, he has alleged a violation of the DOC's mail policy.

An isolated incident of opening legal mail outside of an inmate's presence, without evidence of an improper motive, is insufficient to establish a First Amendment violation. *Gibson v. Erickson*, 830 F. App'x 372, 373 (3d Cir. 2020); *Salter v. Wetzel*, Civ. A. No. 19-1691, 2020 WL 3579554, at *7 (M.D. Pa. June 30, 2020); *Hale v. Pa. Dep't of Corr.*, Civ. A. No. 07-345, 2010 WL 3791833, at *3 (M.D. Pa. Sept. 16, 2010); *see Bieregu*, 59 F.3d at 1452, *abrogated on other grounds by Lewis*, 518 U.S. 343 (finding evidence of a pattern of opening court mail outside an inmate's presence sufficient to state a claim, but finding a single instance of damaged mail not sufficient to state a claim for censorship); *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003).

16

Thompson has not alleged that the Defendants routinely violated the DOC's mail policy or had any improper motive to do so. Nor has he alleged any pattern or practice of requiring mail from a court to be sent to Smart Communications or opened outside his presence. At most, with regard to court mail and Smart Communications, he has alleged that his December 2018 letter from a court was processed as non-legal mail and opened outside his presence. This single isolated incident is not sufficient to establish a First Amendment violation.

But, interpreting the complaint liberally, Thompson also alleges that his October and November 2018 mail from a court were treated in accordance with the DOC's new policy for legal mail and that the new policy unconstitutionally infringed upon his freedom of speech. The 2018 DC-ADM 803 required all legal mail to be opened and photocopied in the inmate's presence, and a copy of the mail was to be delivered to the inmate. The original legal mail was to be retained by the DOC, albeit sealed in an opaque envelope and deposited in a secure receptacle, and then destroyed after 45 days. At the motion to dismiss stage, the Court finds Thompson has plausibly alleged that the application of this policy to his legal mail violated his First Amendment freedom of speech.

Prison systems must open an inmate's legal mail in his presence to ensure the confidentiality of an inmate's protected speech. A DOC's policy or practice of opening legal mail outside an inmate's presence "deprives the expression of confidentiality and chills the inmates' protected expression, regardless of the state's good-faith protestations that it does not, and will not, read the content of the communications." *Jones*, 461 F.3d at 359. Simply put, the purpose of opening mail in an inmate's presence is to ensure that prison officials will not read the mail. *See Bieregu*, 59 F.3d at 1456 (citing *Wolff v. McDonnell*, 418 U.S. 539, 576-77 (1974)). A DOC

practice of keeping a copy of an inmate's privileged mail presents the same risk to confidentiality as opening the mail outside the inmate's presence: the risk that DOC officials will read an inmate's legal mail, despite policies prohibiting such behavior. Although the 2018 DC-ADM 803 required DOC officials to open legal mail in the inmates' presence, the policy to photocopy the legal mail and retain the original legal mail outside the inmates' presence presents a risk of chilling inmates' confidential, protected speech for fear that DOC officials will read the contents of the original communication. Thompson has plausibly alleged that the 2018 DC-ADM 803 legal mail policy—specifically, the Defendants' creation of this policy or application of this policy to his mail from the Superior Court—infringed upon his freedom of speech.

Of course, this is not the end of the inquiry. This policy could still be constitutional if it is reasonably related to legitimate penological interests. Thus, the Court must consider the legitimate governmental interest to justify the prison regulation and other factors including available alternatives and the burden on prison resources. *See Turner*, 482 U.S. at 89-90; *Jones*, 461 F.3d at 360. The *Turner* analysis is a highly fact-intensive inquiry that the Court cannot resolve on this motion to dismiss. *See Ramirez v. Pugh*, 379 F.3d 122, 128 (3d Cir. 2004); *Wolf v. Ashcroft*, 297 F.3d 305, 308-10 (3d Cir. 2002); *Dean v. Tice*, Civ. A. No. 19-113, 2020 WL 3037194, at *3 (W.D. Pa. May 13, 2020), report and recommendation adopted, 2020 WL 3036630 (W.D. Pa. June 5, 2020). Defendant regulators have the burden to put forward the legitimate governmental interest to justify the regulation, *Jones*, 461 F.3d at 360, and the DOC Defendants have not done so at this early stage of the litigation. Thus, at this stage, Thompson has plausibly alleged that the DOC Defendants' application of the 2018 DC-ADM 803 to his mail from the Pennsylvania Superior Court violated his freedom of speech.

18

###### 2.  Mail from District Attorney's Offices

Thompson asserts that his mail from District Attorney's Offices was forced to be sent through Smart Communications, which did not open the mail in Thompson's presence and stored the original mail. (Compl. ¶¶ 31-32.) He specifically references two pieces of mail he received from District Attorney's Offices postmarked January 9, 2019 and February 5, 2019. (Compl. ¶ 21.) As an exhibit to the Complaint, he includes one envelope from the District Attorney's Office of Delaware County, which is addressed to Plaintiff in the care of Smart Communications in Florida. (Compl. Ex. K at 75.)

Thompson's complaint that his mail from a District Attorney's Office was forced to be sent to Smart Communications and opened outside his presence is an argument about the validity of the DOC's control number policy. But the Third Circuit has already assessed and approved of the Pennsylvania DOC's attorney control number system. *Fontroy*, 559 F.3d at 182. The same control number system that the Third Circuit approved in *Fontroy* was still partially present in the 2018 DC-ADM 803, which Thompson challenges here. As with the control number policy in *Fontroy*, under the 2018 DC-ADM 803, mail from an attorney was only considered legal mail if the attorney obtained and used a control number; only legal mail was opened in an inmate's presence, and non-legal mail was opened off-site from the correctional facility. However, there were several new elements in the 2018 DC-ADM 803. Most notably, the new mail policy in 2018 provided for both legal and non-legal mail to be copied and original mail to be withheld from inmates. Non-legal mail had to be addressed to Smart Communications, an off-site processing center in Florida, where it would be opened and electronically scanned, in order for a copy to be provided to the inmate.

By addressing its mail to Smart Communications and failing to include a control number,

the District Attorney's Office chose to classify its mail to Thompson as non-legal. In *Fontroy*, the Third Circuit considered this precise problem. The court noted its concern that inmates "cannot force attorneys and courts to obtain and use Control Numbers[,]" and acknowledged that this made the DOC's control number policy "a less-than-ideal means of accommodating the Inmates' important First Amendment rights." *Id.* at 180-81. Nevertheless, the Third Circuit reasoned that the availability of an alternative that would preserve the inmate's rights to confidential legal communications—specifically, the ability of the sender to acquire and use a control number—was sufficient to favor holding the DOC's new control number policy constitutional under the second step of the *Turner* analysis. *Id.* at 181.

The Court finds *Fontroy* controls Thompson's claims concerning the DOC's policy to classify his mail from a District Attorney's Office as non-legal, and therefore, to allow it to be opened by Smart Communications outside of his presence. An inmate's right to have legal mail opened in his presence is rooted in the notion that those are confidential communications deserving of heightened protections. *See Jones*, 461 F.3d at 359. The difficult question the Third Circuit faced in *Fontroy* was what communications deserve that heightened protection. It found that the Pennsylvania DOC's legitimate penological interest to prevent contraband from entering prisons made the control number system constitutional. *See Fontroy*, 559 F.3d at 178-80. Therefore, Thompson's allegations regarding the DOC's policy of classifying mail from the District Attorney's Office without a control number as non-legal mail, and opening it outside his presence, do not state a claim for an unconstitutional violation of his freedom of speech.

Thompson also challenges the new mail policy for Smart Communications to receive, electronically scan, and withhold originals of incoming non-legal mail, including his mail from

the District Attorney's Office. (Compl. ¶¶ 29-33.) This is a separate inquiry concerning the scope of permissible interference with prisoners' rights to receive non-legal mail. *See Thornburgh v. Abbott*, 490 U.S. 401, 407-08 (1989); *Turner*, 482 U.S. at 91-93. The 2018 DC-ADM 803 interferes with inmates' ability to receive incoming non-legal mail in that it requires processing of non-legal mail in Florida, which could result in delays in inmates receiving the mail, and it does not allow delivery of original mail. Thus, Thompson's challenge to the DOC's policy for Smart Communications to process non-legal mail must comply with *Turner* to be constitutional. *See Hamm v. Rendell*, 166 F. App'x 599, 603 (3d Cir. 2006) (finding reversible error for a district court's failure to undertake a *Turner* analysis of an incoming non-legal mail policy). As described above, such a fact-intensive analysis is not possible at this stage of the litigation. Therefore, the Court cannot dismiss this challenge to the non-legal mail policy for failure to state a claim at this juncture.

### D.  Dismissal on the Basis of Qualified Immunity

Although Thompson has plausibly alleged potential violations of his freedom of speech, this does not guarantee that there is relief available. Defendants' motion to dismiss does not raise the defense of qualified immunity, but pursuant to the screening provisions of the Prison Litigation Reform Act (PLRA), the Court must consider this issue *sua sponte* if it is evident from the face of the Complaint. The Court finds this case should be dismissed because Defendants are entitled to qualified immunity.

### 1.  The Prison Litigation Reform Act

The PLRA permits or requires district courts to engage in proactive screening of civil actions by prisoners who are: proceeding *in forma pauperis*, 28 U.S.C. § 1915(e)(2); seeking

redress from a governmental entity or an officer or employee of a governmental entity, 28 U.S.C. § 1915A; or bringing claims with respect to prison conditions, 42 U.S.C. § 1997e(c)(1). Pub. L. No. 104-134, 110 Stat. 1321 (1996). Thompson's Complaint is subject to screening under each of these PLRA provisions.[5] Pursuant to the PLRA screening provisions, a district court "shall" dismiss a prisoner's action if it determines the complaint "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(iii); 28 U.S.C. § 1915A(b); 42 U.S.C. § 1997e(c)(1). Thus, although immunity is an affirmative defense that ordinarily must be raised in a responsive pleading, if a defendant's absolute or qualified immunity is apparent from the face of the complaint, the PLRA screening provisions permit a court to *sua sponte* dismiss an action on that basis. *See Howell v. Young*, 530 F. App'x 98, 100 (3d Cir. 2013); *Newland v. Reehorst*, 328 F. App'x 788, 791 (3d Cir. 2009).

Thompson seeks compensatory and punitive damages. Thompson cannot recover compensatory damages in a Federal civil action because of the PLRA's prohibition on recovery for mental or emotional injury suffered while in prison without accompanying physical injury. 42 U.S.C. § 1997e(e); *see Allah v. Al-Hafeez*, 226 F.3d 247, 250 (3d Cir. 2000). The Complaint does not allege physical injury and the only injury that could potentially arise from Thompson's allegations about violations of his freedom of speech would be mental or emotional. But the PLRA's bar on compensatory damages does not prohibit recovery of punitive or nominal damages. *Allah*, 226 F.3d at 251-52. Therefore, because Thompson also seeks punitive damages, the Court must assess Defendants' immunity from this claim for relief.

---

[5]     Because the Court did not undertake a screening of the Amended Complaint at the commencement of this action, § 1915A may no longer apply, but § 1915(e)(2) and § 1997e(c) are applicable throughout the litigation. *See Grayson*, 293 F.3d at 110 n.11 (3d Cir. 2002).

### 2.   Qualified Immunity Doctrine

Thompson seeks damages pursuant to 42 U.S.C. § 1983 from the DOC Defendants and Smart Communications for violation of his First Amendment rights. "[W]hen a public official's actions give rise to a § 1983 claim, the privilege of qualified immunity can serve as a shield from civil suit in certain circumstances." *Williams v. Bitner*, 455 F.3d 186, 190 (3d Cir. 2006). As Secretary of the DOC and Superintendents of SCI Phoenix, the DOC Defendants are public officials who could potentially invoke the privilege of qualified immunity. *See Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982); *Sutton v. Rasheed*, 323 F.3d 236, 260 (3d Cir. 2003). The Court first will address the application of qualified immunity to those DOC Defendants based on the facts of this case. Then the Court will address whether qualified immunity applies equally to the DOC's mail processing center, Smart Communications.

#### A.   DOC Defendants

The qualified immunity doctrine "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Thus, the court "must not 'define clearly established law at a high level of generality.'" *Mirabella v. Villard*, 853 F.3d 641, 653 (3d Cir. 2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). But even in novel factual circumstances, a right can be clearly established, when "a general constitutional rule already

identified in the decisional law" applies "with obvious clarity to the specific conduct in question…." *Williams*, 455 F.3d at 191 (quoting *Hope*, 536 U.S. at 741).

If the scope of a particular constitutional right is "highly fact-specific," it can be reasonable for government officials to err in believing that their conduct comports with the law. *Marcavage v. Nat'l Park Serv.*, 666 F.3d 856, 859 (3d Cir. 2012). Officials "should not be stripped of qualified immunity simply because this belief turned out to be mistaken." *Id.* "Thus, so long as an official reasonably believes that his conduct complies with the law, qualified immunity will shield that official from liability." *Sharp*, 669 F.3d at 159.

At issue here is whether Thompson had clearly established rights under the First Amendment to: (1) not have legal mail photocopied or stored outside his presence and receive original incoming legal mail; and (2) not have non-legal mail processed in another state and receive original incoming non-legal mail. Neither of these rights were so clearly established that a reasonable person would have known the new DOC mail policy was unconstitutional.

An inmate's right to confidentiality of legal mail is clearly established. *See Jones*, 461 F.3d at 359; *Al-Amin v. Smith*, 511 F.3d 1317, 1334 (11th Cir. 2008); *Muhammad v. Pitcher*, 35 F.3d 1081, 1083-84 (6th Cir. 1994). But the DOC's new legal mail policy did reasonably attempt to comply with existing precedent governing protection of that right. The 2018 DC-ADM 803 attempted to protect an inmate's right to confidentiality of legal mail by requiring that the legal mail be opened and photocopied in an inmate's presence, then sealed in an opaque envelope, stored in a secure container until destruction, and that this process be captured on video tape, without taping the contents of the legal mail. Even if this policy violated inmates' freedom of speech under a *Turner* analysis, the policy was not a clear violation of the general constitutional rule to protect

24

the confidentiality of inmates' legal mail. *See Jones*, 461 F.3d at 364 (affirming qualified immunity for application of unconstitutional legal mail policy because "there was no guidance in our case law regarding the application of *Bieregu* and *Turner* in the context of the special circumstances encountered in Fall of 2001."); *see also Sutton*, 323 F.3d at 260 (finding qualified immunity for violation of prisoners' free exercise right because a *Turner* analysis presented "close calls on these facts, especially in light of the great deference we accord the judgments of prison officials.").

As for the DOC's new policy to use Smart Communications for handling of non-legal mail, even if this policy were to violate a constitutional right under a *Turner* analysis, it would not violate a clearly established right. Courts have long upheld the practice of opening and examining non-legal mail outside an inmate's presence. *See Gassler v. Wood*, 14 F.3d 406, 408 n.5 (8th Cir. 1994); *Smith v. Shimp*, 562 F.2d 423, 427 (7th Cir. 1977). Several Courts of Appeals, including the Third Circuit, have also approved restrictions on certain types of incoming non-legal mail that could easily conceal contraband. *Hurd v. Williams*, 755 F.2d 306, 307-09 (3d Cir. 1985); *Ward v. Washtenaw County Sheriff's Dept.*, 881 F.2d 325, 329 (6th Cir. 1989); *Kines v. Day*, 754 F.2d 28, 30 (1st Cir. 1985); *Cotton v. Lockhart*, 620 F.2d 670, 672 (8th Cir. 1980). In creating or enforcing the 2018 DC-ADM 803, a DOC official could have reasonably believed that the new policy was constitutional in light of existing precedent. Therefore, the DOC Defendants are entitled to qualified immunity.

### B.  *Smart Communications*

Qualified immunity under § 1983 extends to persons working for the government, regardless of whether they are state employees or merely contracted to perform the work. *Filarsky*, 566 U.S. at 389, 393-94 (finding an attorney retained by municipal entity to conduct an official

25

investigation could invoke qualified immunity). But qualified immunity will not apply to private actors who are "using the mechanisms of government to achieve their own ends…." *Id.* at 392. In *Richardson v. McKnight*, the Supreme Court found that guards in a Tennessee private prison were not entitled to qualified immunity based on a review of the history of immunities in the prison industry and the immunity doctrine's purposes. 521 U.S. 399, 412 (1997). But the Court in *Richardson* specifically noted that it addressed the qualified immunity issue "narrowly, in the context in which it arose[,]" in which a private firm, "with limited direct supervision by the government," managed a private prison. *Id.* at 413. The *Richardson* court explicitly noted that the case did "not involve a private individual briefly associated with a government body, serving as an adjunct to government in an essential governmental activity, or acting under close official supervision." *Id.*; *see Cresci v. Gyss*, 792 F. App'x 226, 227 (3d Cir. 2020) (describing *Richardson* as "a narrow exception to the general rule that private contractors rendering government services can assert official-immunity defenses").

Here, the 2018 DC-ADM 803 specifies that non-legal mail must be sent to "Smart Communications/PA DOC" which it describes as "the Department's contracted central incoming inmate mail processing center." DC-ADM 803 (Effective Date Oct. 3, 2018) at 1-1. The 2018 DC-ADM 803 also dictates how Smart Communications must handle inmates' incoming non-legal mail. *Id.* at 1-8. Smart Communications was contracted to execute the Commonwealth's constitutional mandate to provide its correctional facilities' inmates with access to the mail. Unlike the prison guards in *Richardson*, Smart Communications was essentially serving as an adjunct to a state prison facility in its essential governmental activity to serve state prison inmates. And much like the investigator granted qualified immunity in *Filarksy*, Smart Communications could be left

"holding the bag" for action taken in conjunction with government employees who enjoy immunity for the same activity. 566 U.S. at 391. Therefore, the Court finds that qualified immunity should apply equally to Smart Communications because it was contracted to assist the DOC in carrying out its essential work pursuant to official DOC policy.

All Defendants are entitled to qualified immunity for the First Amendment violations alleged. Thompson cannot offer any factual amendments to alter this finding. Therefore, the case must be dismissed with prejudice because leave to amend the complaint in these circumstances would be futile. *See Wilson v. Altman*, 807 F. App'x 172, 177 (3d Cir. 2020).

## IV.   CONCLUSION

For the foregoing reasons, the Defendants' motion to dismiss pursuant to Rule 12(b)(6) is granted in part and denied in part, but the Amended Complaint is dismissed with prejudice pursuant to the Court's obligations under 28 U.S.C. § 1915(e)(2)(B)(iii) and 42 U.S.C. § 1997e(c)(1), because the Defendants are entitled to qualified immunity. An Order consistent with this memorandum will be docketed separately.